United States District Court
Northern District of California

1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    RUSSIAN HILL CAPITAL, LP,          Case No.  15-cv-02554-HSG

8              Plaintiff,
                                        **ORDER GRANTING IN PART AND**
9         v.                            **DENYING IN PART DEFENDANT'S**
                                        **MOTION TO DISMISS WITH LEAVE**
10   ENERGY CORPORATION OF AMERICA,     **TO AMEND THE COMPLAINT, AND**
                                        **SETTING CASE MANAGEMENT**
11             Defendant.               **CONFERENCE**

12                                      Re: Dkt. No. 20

13

14        Before the Court is Defendant Energy Corporation of America's ("Defendant") motion to

15   dismiss Plaintiff Russian Hill Capital, LP's ("Plaintiff") amended complaint, Dkt. No. 16 ("Am.

16   Compl."), for failure to state a claim upon which relief can be granted under Federal Rule of Civil

17   Procedure 12(b)(6) and for failure to plead with sufficient particularity under Federal Rule of Civil

18   Procedure 9(b) and/or the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2).  Dkt.

19   No. 20 ("Mot.").  Plaintiff asserts claims for fraud and intentional misrepresentation under both

20   California and federal law regarding statements and omissions made by Defendant in connection

21   with a securities transaction.  Defendant moves to dismiss on the basis that it disclosed the

22   information allegedly withheld, its representations were immaterial as a matter of law in any case,

23   and Plaintiff failed to sufficiently plead their allegations of scienter.  Plaintiff has filed an

24   opposition, Dkt. No. 26 ("Opp."), and Defendant has replied, Dkt. No. 28 ("Reply").

25        The Court has carefully considered the parties' arguments, both in their briefs and at oral

26   argument.  For the reasons and in the manner set forth below, the Court **GRANTS IN PART** and

27   **DENIES IN PART** Defendant's motion to dismiss.

28   ///

# I.      BACKGROUND

## A.      FACTUAL ALLEGATIONS

This is a securities fraud case.  Plaintiff was a shareholder in non-party Eastern American Natural Gas Trust ("NGT").  Compl. ¶ 1.  Defendant operated properties in which NGT held net profits interests.  *Id.* ¶ 12.  Net profits interests are created, for example, where one company owns the rights to explore and develop a property for energy resources, but leases those property rights to a second company in exchange for a cut of the profits that come from operating the property.

On February 13, 2013, Defendant announced that NGT would be wound down.  *Id.* ¶ 14.  As part of the wind down, NGT shareholders, like Plaintiff, would automatically receive a one-time cash payment for each share of NGT held.  *Id.*  In connection with that announcement, Defendant's CEO, John Mork, held a staged question-and-answer presentation.  *Id.* ¶ 15.  The presentation was intended to convince NGT shareholders to tender their shares to Defendant in exchange for stock instead of the cash they were otherwise guaranteed.  *Id.* ¶¶ 15, 21.  That stock was in a similar entity called ECA Marcellus Trust I ("ECT"), which Defendant had formed.  *Id.* ¶ 21.  If NGT shareholders accepted the exchange offer, they would receive 1.361 shares of ECT stock for every NGT share exchanged, which appeared to be a profitable trade.  *Id.* ¶¶ 21, 23.

Plaintiff asserts that the exchange offer was actually a losing proposition, about which Mr. Mork made false and misleading statements to induce acceptance from NGT shareholders.  *Id.* ¶¶ 13, 19-20, 24.  Specifically, Plaintiff alleges that Mr. Mork misstated the total amount of the cash payment to which NGT shareholders were entitled if they declined the exchange offer.  *Id.* ¶¶ 20, 22.  In addition to the one-time cash payment that NGT shareholders would receive from the wind down, they were also entitled to a final distribution—essentially, one last dividend payment.  *Id.*  Plaintiff alleges that Defendant knew the amount of dividends that had accrued from October 1, 2012, to February 13, 2013.[1]  *Id.* ¶ 20.  Taking that final distribution into account, NGT shareholders who accepted the exchange offer actually took a loss as compared to declining the offer.  *Id.* ¶¶ 23, 25-29.   Plaintiff claims that Defendant's failure to affirmatively disclose the

---

[1] The amended complaint states that the accrual period was from October 1, 2012, to February 13, *2015, see id.*, but the Court assumes that is a typographical error and that the correct year is 2013.

1    existence of the final distribution was fraudulent and misleading.

2          In support of these allegations, Plaintiff attaches a transcript of the investor presentation.

3    *Id.*, Ex. A.  Because Mr. Mork's statements are the key to resolving this motion, the Court sets the

4    relevant portions out in full.  Mr. Mork described the exchange offer as follows:

> The transaction is pretty straightforward.  We are offering — Energy
> Corporation of America is offering to tender for approximately 3.2
> million depository units of the Eastern American Natural Gas Trust
> at a premium of around 7.6 percent.  You will remember that the
> Eastern American Natural Trust, NGT, terminates in May of this
> year after 20, very successful years of distributions.  ***The final
> distribution will be received about the 15th of August.  If you
> tender, you will receive a 7.6 percent premium or about $22.55 per
> unit, paid to you in ECT units***, and I'll discuss that a little bit later.
> No one will be forced to tender.  You can choose not to tender, but
> ***you won't receive the terminal value which will be $20.95 in cash
> until about August.***  Currently, NGT units are trading for
> approximately $20.70.  In summary, ***the exchange offer allows
> NGT investors to exchange their depository units at a premium for
> ECT common units***, and a security that will pay quarterly
> distributions for approximately seventeen and a half more years.

14   *Id.* at 1 (emphasis added).  Plaintiff alleges that this statement was misleading because Mr. Mork

15   did not clearly distinguish between the "final distribution" and "terminal value."  To that effect,

16   when asked why NGT shareholders should accept the offer, Mr. Mork provided this rationale:

> Well, I think the biggest thing is there's no one forcing you to tender
> your units. If you don't want to, you don't need to.  But, ***you're
> going to get a significant premium, about a 7.6 percent premium to
> the terminal value*** which is fixed. So ***we know right now what all
> NGT units are going to be paid when they terminate*** here in about
> two months.  And ***that's going to be $20.95***.  If you tender your
> units, you'll get about $1.60 or 7.6 percent premium at 22.55 and
> this will paid to you in ECT units which are giving that higher 12
> percent yield and will continue to have distributions for the next 17
> years or so.

23   *Id.* at 3 (emphasis added).  Mr. Mork concluded the presentation by explaining what would happen

24   if NGT shareholders did not accept the exchange offer.  He stated: "Very simply, you'll, in about

25   August of this year, a little later than you'll get the ECT units which you'll get in about a month or

26   so, ***you will be getting $20.95 in cash as a terminal payment***, but NGT is over.  ***There will be no***

27   ***more distributions.***  It will end and cease to exist."  *Id.* (emphasis added).

28         Defendant repeated its claim that NGT shareholders who did not tender would "receive

United States District Court
Northern District of California

1  $20.95" in a filing with the Securities Exchange Commission ("SEC") made that same day.  *Id.* ¶

2  18.  Plaintiff alleges that it relied on all of these statements and accepted the exchange offer.  *Id.*

3  ¶¶ 24, 26.  As a result, Plaintiff took a comparative loss.  *Id.* ¶¶ 25, 27, 29.

### B.    PROCEDURAL HISTORY

Plaintiff filed this action in the San Francisco Superior Court on May 5, 2015.  Dkt. No. 1

at 1.  Defendant timely removed the case to this Court on the grounds of both federal question and

diversity jurisdiction.  *Id.*  Defendant moved to dismiss Plaintiff's complaint, Dkt. No. 11, and

Plaintiff filed the now-operative amended complaint in response.  Therein, Plaintiff asserts claims

for fraud and misrepresentation under California law and violation of Section 14(e) of the

Securities Exchange Act of 1934.   Defendant again moves to dismiss for failure to state a claim

upon which relief can be granted and for failure to plead with sufficient particularity.

## II.    REQUEST FOR JUDICIAL NOTICE

In support of its motion to dismiss, Defendant requests judicial notice of two documents:

(1) the prospectus for its exchange offer ("Prospectus"); and (2) the PowerPoint slides that Mr.

Mork used during his investor presentation ("Presentation Slides").  RJN at 1-2.  Both documents

were filed with the SEC on February 13, 2013.  RJN at 2.  Defendant argues that both documents

are subject to judicial notice because they are public records and were incorporated by reference

into Plaintiff's amended complaint.  *Id.* at 2-4.  Plaintiff does not oppose Defendant's request.

The Court takes judicial notice of both documents as public records to the extent that they

show Defendant and Mr. Mork made the statements contained therein.  *See Metzler Inv. GMBH v.

Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) (SEC filings are subject to judicial

notice).  But the Court does not assume the truth of those statements to the extent that Plaintiff

might contest their veracity.  *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052,

1066-67 (N.D. Cal. 2010) (taking judicial notice of SEC filings discussed in the complaint but not

for the truth of the matters asserted therein unless appropriate in light of the plaintiff's allegations).

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint

United States District Court
Northern District of California

1    failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

2    dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its

3    face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible when the

4    plaintiff pleads "factual content that allows the court to draw the reasonable inference that the

5    defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6           For the purposes of this analysis, a court "accept[s] factual allegations in the complaint as

7    true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*

8    *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Moreover, a court

9    "presume[s] that general allegations embrace those specific facts that are necessary to support the

10   claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994).  A court is not required,

11   however, to "assume the truth of legal conclusions merely because they are cast in the form of

12   factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal

13   quotation omitted).  "[C]onclusory allegations of law and unwarranted inferences are insufficient

14   to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

15          **B.      Federal Rule of Civil Procedure 9(b)**

16          Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party

17   must state with particularity the circumstances constituting fraud or mistake."  "Malice, intent,

18   knowledge and other conditions of a person's mind may be alleged generally."  *Id.*  "[The Ninth

19   Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give

20   defendants notice of the particular misconduct which is alleged to constitute the fraud charged so

21   that they can defend against the charge and not just deny that they have done anything wrong."

22   *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (internal citations and quotations omitted).

23          To that end, it is well-settled that claims that "sound in fraud" or those that are "grounded

24   in fraud" must also satisfy the heightened pleading requirements of Rule 9(b).  *Kearns v. Ford*

25   *Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal quotation omitted).  This means that the

26   complaint must allege "the who, what, when, where, and how" of the alleged fraudulent conduct,

27   *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a]

28   statement or omission complained of was false and misleading," *In re GlenFed, Inc. Sec. Litig.*, 42

United States District Court
Northern District of California

1   F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as recognized*

2   *by Ronconi v. Larkin*, 252 F.3d 423, 429 & n.6 (9th Cir. 2001).

3         Additionally, under the Private Securities Litigation Reform Act ("PSLRA"), a plaintiff

4   alleging a violation of any part of the Securities Exchange Act of 1934, including Section 14(e),

5   by virtue of a misleading statement is subject to two further heightened pleading requirements.

6   *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  First, "the complaint

7   shall specify each statement alleged to have been misleading, [and] the reason or reasons why the

8   statement is misleading[.]" 15 U.S.C. 78u-4(b)(1).  Second, whenever scienter is an element of

9   the claim at issue, the complaint must also "state with particularity facts giving rise to a strong

10  inference that the defendant acted with the required statement of mind." *Id.* § 78u-4(b)(2).  "The

11  inference of scienter must be more than merely 'reasonable' or 'permissible'"—"it must be cogent

12  and at least as compelling as any opposing inference one could draw from the facts alleged." *See*

13  *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  For that reason, a court "must

14  consider plausible nonculpable explanations for the defendant's conduct." *Id.*

15  **IV.   DISCUSSION**

16        The Court now turns to the substance of Defendant's motion to dismiss.  Defendant argues

17  that Plaintiff cannot state a claim for three reasons: (1) the official transcript of and Presentation

18  Slides from the February 13, 2013, investor presentation show that Defendant did not make any

19  false or misleading statement about the final distribution owed to NGT shareholders; (2) even if it

20  did make a false or misleading statement, misrepresentations made during investor presentations

21  are superseded by official prospectuses as a matter of law; and (3) Plaintiff has failed to plead that

22  Defendant had the required intent with particularity under Rule 9(b) and federal securities laws.

23        Although it is a close call, the Court cannot conclude as a matter of law at this stage that

24  Defendant's representations were not false or misleading.  In addition, while the Court finds that

25  the Prospectus might have discussed the potential for a final distribution to NGT shareholders, it

26  did so using undefined terms of art that require additional evidence to conclusively interpret.

27  Finally, the Court finds that Plaintiff has failed to adequately allege scienter for its federal

28  securities claim.

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1

**A.      Misrepresentation**

Defendant contends that Plaintiff's complaint and the materials subject to judicial notice show that it truthfully disclosed all material information about the exchange offer multiple times. Defendant argues that these undisputed allegations are fatal to each of Plaintiff's claims, because those claims each require a false representation of fact or a contextually misleading statement. To determine whether that is the case, the Court must first consider the nature of Plaintiff's claims.

Plaintiff asserts claims for fraud, misrepresentation in the purchase and sale of securities under California Corporations Code § 25401, and fraud and misrepresentation in connection with a tender offer under Section 14(e) of the Securities Exchange Act of 1934. To state a claim for fraud under California law, the plaintiff must allege either an affirmative misrepresentation or an actionable omission. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). An omission is actionable when the defendant makes partial representations to the plaintiff but also suppresses some material fact. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997). California Corporations Code § 25401 proscribes the same types of misrepresentation but in the securities context. Cal. Corp. Code § 25401 (securities purchasers, sellers, and offerors may not make "an untrue statement of a material fact" or "omit . . . a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading.") In the specific context of tender offers, Section 14(e) of the Securities Exchange Act of 1934 proscribes the same misrepresentations barred by California Corporations Code § 25401, as well as "any fraudulent, deceptive, or manipulative acts or practices," 15 U.S.C. § 78n(e).[2]  In sum, Plaintiff's claims require an allegation that Defendant made a false statement or a statement that, while literally true, was misleading in its context and without further appropriate disclosure.

Under both federal and California law, "a statement that is literally true can be misleading and thus actionable under the securities laws." *Brody*, 280 F.3d at 1006; *accord Simon*, 9 Cal. 4th at 513. To determine whether a statement is misleading, even when literally true, courts in the

---

[2] California Corporations Code § 25401 was patterned after federal securities law and, as a result, Section 14(e) uses identical language to set out a claim for false or misleading statements, but omits the further language about fraudulent acts. *See People v. Simon*, 9 Cal. 4th 493, 509 (1995).

United States District Court
Northern District of California

Ninth Circuit and in California apply an objective reasonable investor test: "a statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (internal quotation omitted); *accord Ins. Underwriters Clearing House, Inc. v. Natomas Co.*, 184 Cal. App. 3d 1520, 1528 (1986) (applying reasonable investor test). Without satisfying the reasonable investor test, "a statement will not mislead even if it is incomplete or does not include all relevant facts." *Brody*, 280 F.3d at 1006.

The Court now considers whether Plaintiff has sufficiently alleged the claim element of misrepresentation under these standards. Plaintiff's position is that Defendant, by and through Mr. Mork's February 13, 2013, investor presentation and its Prospectus, falsely or misleadingly stated the total amount that NGT shareholders would receive if they declined the exchange offer by not disclosing that NGT shareholders were owed a final distribution in addition to payment of the terminal value. Am. Compl. ¶¶ 16-20, 22. Plaintiff points to the following two statements as misrepresentations:

- "So we know right now what all NGT units are going to be paid when they terminate here in about two months. And *that's going to be $20.95*." *Id.* ¶ 16 (emphasis added); and

- "Very simply, you'll, in about August of this year, a little later than you'll get the ECT units which you'll get in a month or so, *you will be getting $20.95 in cash as a terminal payment* but NGT is over. *There will be no more distributions.* It will end and cease to exist." *Id.* ¶ 17 (emphasis added).

Plaintiff argues that the first of these statements was false because the total amount that it would have received if it declined the exchange offer was higher than $20.95. The second statement was false, Plaintiff contends, because there was in fact an additional distribution. Alternatively, even if these statements were not literally false, Plaintiff argues that these statements were misleading because Defendant was intimating that there would be no more distributions and, as a result, the exchange offer was more favorable than accepting the cash wind-down payment.

Defendant responds that each of these statements are not false or misleading, but are, at worst, taken out of context to create the illusion of actionable misrepresentations. In support of

United States District Court
Northern District of California

1    that position, Defendant highlights various statements in the Presentation slides that accompanied

2    the investor presentation and the Prospectus that was filed with the SEC shortly afterwards.  Those

3    materials, Defendant argues, make abundantly clear that the "terminal value" of each "NGT unit"

4    was a distinct concept from the "final distribution," the possibility of which was fully disclosed.

5         Taking the allegations of the complaint to be true and drawing all reasonable inferences in

6    Plaintiff's favor, the Court cannot find as a matter of law that Defendant's statements were not

7    false or misleading.  The crux of this dispute is whether Defendant affirmatively stated or implied

8    that the absolute total payment that non-tendering NGT shareholders would receive included only

9    the "terminal value" of the NGT shares, or also included a "final distribution" owed as an accrued

10   dividend.

11        As an initial matter, the Court does not believe that these terms of art are ambiguous within

12   the context of Mr. Mork's investor presentation.  There is no question that the definition of the

13   term "distribution" contextually refers to dividend payments.  Throughout the presentation, Mr.

14   Mork used the term "distribution" in a clear and consistent manner that referred to a dividend

15   payment to shareholders flowing from continued ownership of stock, whether NGT or ECT.  *See,*

16   *e.g.*, Am. Compl., Ex. A at 1 ("You will remember that [NGT] terminates in May of this year after

17   20 very successful years of distributions."); *id.* ("[T]he exchange offer allows NGT investors to

18   exchange their depository units at a premium for ECT common units, and a security that will pay

19   quarterly distributions for approximately seventeen and a half more years."); *id.* at 2 ("Since 2010,

20   ECT has paid $5.37 per unit in distributions and it pays quarterly distributions to all the unit

21   holders."); *id.* ("The ECT . . . unit holders will receive quarterly distributions from ECT.  The

22   ECT's dividend during the prior four quarters has been approximately $2.39 per unit and the NGT

23   dividend, during the same four quarters was $0.57 per unit.  So about four times as much as

24   dividend per unit[.]").  The Presentation Slides even included a chart and a graph comparing the

25   historical distributions of ECF and NGT that refer to them as quarterly dividends.  RJN, Ex. 2 at 5.

26        Similarly, Mr. Mork used the term "terminal value" to refer to the final price of each share

27   of NGT stock upon winding down as a concept distinct and apart from a "distribution."  *See* Am.

28   Compl., Ex. A at 3 ("[Y]ou're going to get a significant premium, about a 7.6 percent premium to

the terminal value [of NGT] which is fixed . . . that's going to be $20.95."); RJN, Ex. 2 at 2

("Non-Tendered units will receive $20.95, the approximate Liquidation Value of NGT Depositary

Units").  In short, any reasonable investor would have known that a distribution was a dividend,

distinct from the terminal value.

That said, Mr. Mork made representations about the total payment that non-tendering NGT

shareholders would receive that preclude the Court from concluding that dismissal is appropriate

as a matter of law.  At the end of his presentation, Mr. Mork stated that, "Very simply, you'll, in

about August of this year, a little later than you'll get the ECT units which you'll get in about a

month or so, you will be getting $20.95 in cash as a terminal payment, but NGT is over.  There

will be no more distributions.  It will end and cease to exist."  Am. Compl., Ex. A at 4.  Drawing

all reasonable inferences in Plaintiff's favor, Mr. Mork's representation that NGT shareholders

would receive $20.95 as a "terminal *payment*" introduced a separate concept from the "terminal

value" of NGT shares that could imply to a reasonable investor that $20.95 was the total payment

that a non-tendering NGT shareholder would receive.  Similarly, the Presentation Slides stated that

"Non-Tendered units will receive $20.95, the approximate Liquidation Value of NGT Depositary

Units."  RJN, Ex. 2 at 2.  That representation suggests that the total bargain a non-tendering NGT

shareholder would receive in comparison to a tendering shareholder was $20.95.  As a result, the

Court cannot hold as a matter of law that a reasonable investor would not have been given "the

impression of a state of affairs that differs in a material way from the one that actually exists."  *See*

*Berson*, 527 F.3d at 985.[3]

The Court must also address Defendant's argument that it fully disclosed the existence of

the final distribution in the Prospectus, its complete and official statement of the exchange offer.

If that were true, then Plaintiff might not be able to claim that it was misled, justifiably relied on

the representations in the presentation alone, or found them material.  *See Durning v. First Boston*

*Corp.*, 815 F.2d 1265, 1268 (9th Cir. 1987) (holding that "obvious" disclosures in a prospectus

_____

[3] Of course, whether Plaintiff will ultimately prevail on this issue at summary judgment or trial
remains to be seen.

United States District Court
Northern District of California

warrant dismissal of claims for misleading statements as a matter of law).[4]  To that effect, the Prospectus states: "On or about August 15, 2013, such NGT Depositary Unitholders will also receive their pro rata share of the net proceeds attributable to the sale of the perpetual net profits interest (approximately $0.95 per trust unit) *plus their pro rata share of revenues attributable to the term net profits interest for the period beginning October 1, 2012 through May 15, 2013*, less any costs and expenses or reserves of NGT during such period."  RJN, Ex. 1 at 2 (emphasis added).  Additionally, below a graph providing "historical information" about "cash distributions per NGT Depositary Unit," the Prospectus states that, "Distributable income, if any, attributable to these periods will be distributed as part of the final distribution of NGT, which is expected to be made in August 2013."  RJN, Ex. 1 at 7.  Defendant argues that these statements clearly disclose that a final distribution could occur and that non-tendering NGT shareholders would receive it.

Plaintiff responds that this disclosure is deficient for several reasons, but the Court need only reach one of them to resolve this issue.  Plaintiff argues that the terms "revenues attributable to the term net profits interest" and "distributable income" in the Prospectus, which Defendant posits are equivalent to the term "distribution," are undefined terms of art that are not explained by their context.  The Court is compelled to agree.  The Ninth Circuit has made clear that for a disclosure containing a term of art to warrant dismissal, there must be "undisputed evidence that [this was a] term[] of art that investors would have understood[.]"  *Berson*, 527 F.3d at 986.  As it currently stands, there is no contextual evidence that makes the meaning of these terms so obvious that no reasonable shareholder could conclude otherwise.  *See Durning*, 815 F.2d at 1268 ("The determination [of adequate disclosure] requires delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him,

---

[4] The Court notes that unlike common law fraud, California Corporations Code § 25401 and Section 14(e) of the Securities Exchange Act of 1934 dispense with the requirement of actual reliance.  *Boam v. Trident Fin. Corp.*, 6 Cal. App. 4th 738, 743-44 (1992) ("Sections 25401 and 25501 . . . dispense with the common law element of actual reliance.); *Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1131 (N.D. Cal. 2006) ("While other circuits require that plaintiffs must also prove reliance and causation in connection with a section 14(e) claim, the Ninth Circuit does not appear to require either.").  For that reason, unjustifiable reliance on representations in the presentation would preclude only Plaintiff's fraud claim.  But Plaintiff's claims all require a showing of materiality, and it is not clear that Plaintiff could show that the representations at issue were material in light of the further disclosures in the Prospectus.

and these assessments are peculiarly ones for the trier of fact.  Only if the disclosure is so obvious that reasonable minds cannot differ is the issue appropriately resolved as a matter of law.  Like materiality, adequacy of disclosure is normally a jury question.") (internal quotation and citations omitted).  Accordingly, the Court cannot rule as a matter of law at the dismissal stage that there was an adequate disclosure in the Prospectus; this will be an issue for summary judgment or trial.

### B.      Bespeaks Caution Doctrine

Defendant contends that even if it made a cognizable misrepresentation in the February 13, 2013, investor presentation, it is immaterial as a matter of law because the Prospectus supersedes all prior representations.  In support of that proposition, Defendant cites *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1092 (C.D. Cal. 2003).  That case concerned application of the "bespeaks caution" doctrine, which provides that "economic projections, estimates of future performance, and similar optimistic statements in a prospectus are not actionable when precise cautionary language elsewhere in the document adequately discloses the risks involved."  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413, (9th Cir. 1994).

Even if the bespeaks caution doctrine applied in this case, which is an issue that the Court need not reach, it cannot be found to apply on this motion to dismiss for the same reason stated in Section IV.A above.  The disclosure in the Prospectus that Defendant points to involves terms of art that require additional evidence outside of the four corners of the pleadings and the judicially noticed materials to determine.  For that reason, the Court cannot hold that the Prospectus supersedes the alleged misrepresentations in the investor presentation as a matter of law.

### C.      Scienter

Defendant also argues that Plaintiff's complaint fails to plead scienter with sufficient particularity under Federal Rule of Civil Procedure 9(b) and the PSLRA.

From the outset, the Court notes that the PSLRA applies only to federal securities claims and not Plaintiff's two claims brought under California law.  15 U.S.C. 78u-4(b)(2).  Furthermore, Plaintiff's claim under California Corporations Code § 25401 shifts the burden on the question of intent to the defendant in civil actions for damages, *see* Cal. Corp. Code § 25501, and, therefore, allegations of intent have no bearing on that claim at the motion to dismiss stage.  And although

United States District Court
Northern District of California

1    Rule 9(b) applies to Plaintiff's fraud claim, *see Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105

2    (9th Cir. 2003), intent may be alleged generally, Fed. R. Civ. P. 9(b).  Plaintiff sufficiently alleges

3    intent in a plausible manner.  *See* Am. Compl. ¶ 22 ("[Defendant] purposefully misstated the

4    amount of the wind-down payment that NGT shareholders . . . would receive if they chose not to

5    tender their NGT shares for shares of ECT."); *id.* ¶ 19 ("Defendants [sic] understated the value

6    payable to NGT shareholders that did not tender their shares to [Defendant] because [Defendant]

7    wanted as many NGT shareholders as possible to tender their shares.").  Accordingly, the Court

8    denies Defendant's motion to dismiss as to both of Plaintiff's claims under California law.

9        The remaining issue is whether Plaintiff adequately pled the intent element of its Section

10   14(e) claim under the PSLRA.  Section 14(e) requires an allegation of scienter.  *See Biotechnology*

11   *Value Fund, L.P. v. Celera Corp.*, 12 F. Supp. 3d 1194, 1199 (N.D. Cal. 2013) (noting that while

12   the Ninth Circuit has not ruled on the issue, the majority of other circuits and districts, including

13   this one, have held that Section 14(e) requires scienter).  Under the PSLRA, whenever intent is a

14   claim element, the complaint must "state with particularity facts giving rise to a strong inference

15   that the defendant acted with the required statement of mind."  15 U.S.C. § 78u-4(b)(2).  The court

16   must determine whether "all of the facts alleged, taken collectively, give rise to a strong inference

17   of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."

18   *Tellabs*, 551 U.S at 322-23.  "The inference of scienter . . . must be cogent and at least as

19   compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 324.

20       Defendant contends that Plaintiff has failed to adequately plead scienter with respect to its

21   Section 14(e) claim because there is no allegation that Defendant knew that NGT shareholders

22   were entitled to an unpaid dividend or, even if it did, how much that dividend would be at the time

23   the investor presentation occurred or the Prospectus was issued.  If that were true, then Defendant

24   would not have a financial motive to deceive NGT shareholders.  Plaintiff responds that it has

25   alleged Defendant wanted the exchange offer to go through because it wanted to pay for the NGT

26   shares in stock rather than cash, Am. Compl. ¶ 20, which Defendant does not now deny.

27       Plaintiff's allegation is not sufficient to establish scienter under the PSLRA.  "While it is

28   true that motive can be a relevant consideration, and personal financial gain may weigh heavily in

13

favor of a scienter inference," *Tellabs*, 551 U.S. at 325, the Court finds it plausible that Mr. Mork spoke in shorthand at the investor presentation, without the intent to mislead, when he referred to a "terminal payment."  It is certainly *possible* that he intended to camouflage the existence of an impending dividend payment.  But in omission cases, "the plaintiff must plead a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Without more, the Court does not find that the allegations establish a gross omission.

## V.     CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss.  Plaintiff fails to sufficiently plead scienter in support of its federal securities claim.  That claim is **DISMISSED WITHOUT PREJUDICE**.  Plaintiff may file an amended complaint within 30 days.  The Court also **SETS** a further case management conference in this matter for April 19, 2016, at 2:00 p.m. to discuss setting a schedule for this case.

**IT IS SO ORDERED.**

Dated:  3/15/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California